IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| OSCAR RIVERA MENDOZA,<br><br>Petitioner,<br><br>vs.<br><br>SHERIFF JEROME KRAMER, Lincoln County Sheriff and Warden of the Lincoln County Detention Center (Custodian of Petitioner); DAVID VENTURELLA, Acting Director of U.S. Immigration and Customs Enforcement; MARKWAYNE MULLIN, Secretary of the U.S. Department of Homeland Security; and TODD BLANCHE, Acting Attorney General of the United States;<br><br>Respondents. | **8:26CV417**<br><br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on Petitioner Oscar Rivera Mendoza's petition for a writ of habeas corpus. (Filing No. 1). Rivera Mendoza, a noncitizen detained by U.S. Immigration and Customs Enforcement, alleges his detention is unlawful because he has not received an individualized custody determination. But for the reasons set forth below, his petition will be denied.

## BACKGROUND

Rivera Mendoza is a native and citizen of Mexico. (Filing No. 1 at 4). He entered the United States in 2001 and has lived here continuously since then. (Filing No. 1 at 4, 5).

His habeas petition was set in motion by a "routine traffic stop in North Dakota." (Filing No. 1 at 7). When U.S. Immigration and Customs Enforcement (ICE) officers asked Rivera Mendoza for identification, he produced an Illinois driver's license. (Filing No. 1 at 7). That, he

says, prompted one of the officers to tell another "they should let Mr. Rivera Mendoza go[.]" (Filing No. 1 at 7). Instead, the officers detained Rivera Mendoza after determining he "did not possess lawful immigration status." (Filing No. 1 at 7). ICE then initiated removal proceedings against Rivera Mendoza. (Filing No. 1 at 7). At some point, ICE transferred Rivera Mendoza from North Dakota to the Lincoln County Detention Center in North Platte, Nebraska, where he remains. (Filing No. 1 at 8). He has been in ICE detention "for weeks." (Filing No. 1 at 2). An "individual merits hearing" in Rivera Mendoza's removal proceedings is set for August 13, 2026. (Filing No. 1 at 7). He "intends to seek relief from removal" there. (Filing No. 1 at 7).

But predicting "that no motion for [release on] bond will be entertained" by an immigration judge given *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) and *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), Rivera Mendoza petitioned for habeas relief. (Filing No. 1). Invoking the three factor test from *Mathews v. Eldridge*, 424 U.S. 319 (1976), he alleges his continued detention without any individualized custody determination violates his due process rights. (Filing No. 1 at 10). He therefore seeks immediate release "on reasonable conditions of supervision" or a bond hearing. (Filing No. 1 at 14).

## STANDARD OF REVIEW

"Habeas is at its core a remedy for unlawful executive detention." *Munaf v. Green*, 553 U.S. 674, 693 (2008). The Constitution guarantees that the writ of habeas corpus is available to every individual detained within the United States. *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const. Art. I, § 9, cl. 2). The Court's jurisdiction to hear habeas challenges extends to immigration-related detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under 28 U.S.C. § 2241, a district court can grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Rivera Mendoza bears the burden to show his custody is unlawful. 28 U.S.C. § 2241(c)(3); *Walker v. Johnston*, 312 U.S. 275, 286 (1941).

## DISCUSSION

28 U.S.C. § 2243 provides that the Court "shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it appears from the application that the applicant or person detained is not entitled thereto." Here, the face of Rivera

2

Mendoza's petition shows he is not entitled to habeas relief. For the reasons stated below, then, the Court will deny his petition without requiring the Respondents to show cause.

The Court has previously found that due process challenges to immigration detention raised by petitioners similarly situated to Rivera Mendoza fail. *See, e.g., Crespo-Barragan, v. Mullin et al.,* 2026 WL 2056579 (D. Neb. July 16, 2026). It reaches the same conclusion here.

As Rivera Mendoza acknowledges, *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026) "controls the statutory question in this [c]ircuit[.]" (Filing No. 1 at 2, 9, 12-13). There, the Eighth Circuit held that noncitizens like Rivera Mendoza are "applicants for admission" under that term's statutory definition, so they are subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *See id.* at 1134. But the court did not reach the issue of whether mandatory detention under § 1225(b)(2) raises any constitutional problems. *See id.* at 1140 n.8 (Erickson, J., dissenting).

The problem for Rivera Mendoza is that extant Eighth Circuit authority says it does not. In *Banyee v. Garland*, 115 F.4th 928 (8th Cir. 2024), the court reaffirmed the proposition that "[d]etention during deportation proceedings [i]s . . . constitutionally valid." *Id.* at 931 (quoting *Demore v. Kim*, 538 U.S. 510, 523 (2003)). Because "Congress may make rules as to aliens that would be unacceptable if applied to citizens," the government "may constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* (quoting *Demore,* 538 U.S. at 522). "In other words, the government has more flexibility when dealing with immigration." *Id.* "The overall point," the Eighth Circuit reasoned, is that "[d]etention during removal proceedings is a constitutionally permissible part of th[e] process." *Id.* at 932. That is so even if the statute authorizing detention does not allow for a bond hearing. *See Demore,* 538 U.S. at 528 ("[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means to accomplish its goal.").

*Banyee* also makes Rivera Mendoza's reliance on *Mathews* untenable. Cases like *Demore* and *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001) "leave no room for a multi-factor 'reasonableness' test." *Id.* at 933. While it is true that "deciding what process is due ordinarily requires a form of interest balancing," those cases "have already done whatever balancing is necessary" in the detention context. *Id. See, e.g., Demore*, 538 U.S. at 528 (explaining that "when the Government deals with deportable aliens, the Due Process Clause does not require it to employ the least burdensome means," so it is sufficient if "detention necessarily serves the purpose of

3

preventing deportable aliens from fleeing prior to or during their removal proceedings"); *Zadvydas v. Davis,* 533 U.S. 678, 701 (2001) (linking a reasonable time limitation for detention to "the likelihood of removal in the reasonably foreseeable future"). As the Eighth Circuit noted, "the lead *dissent* in *Demore* advocated for the type of 'individual determination' [Rivera Mendoza] now seeks, presumably under a *Mathews*-type inquiry." *Banyee,* 115 F.4th at 933 (emphasis in original). Instead, the "bright-line rule" is that "the government can detain an alien for as long as deportation proceedings are still *pending*." *Id.* (citation modified) (emphasis in original). For Rivera Mendoza, they are, so *Mathews* is of no help to him.

Further, that Rivera Mendoza has not received an individualized custody determination does not make his custody unlawful. The Supreme Court has repeatedly upheld the constitutionality of *categorical*, mandatory detention of certain classes of noncitizens. *See, e.g., Demore,* 538 U.S. at 531; *Carlson v. Landon,* 342 U.S. 524, 541-42 (1952) (rejecting claims of noncitizens deemed "deportable because of their participation in Communist activities" that they were entitled to be released from detention if they did not pose a flight risk); *Reno v. Flores,* 507 U.S. 292, 313 (1993) (upholding mandatory detention of a class of noncitizen juveniles because "reasonable presumptions and generic rules" are not necessarily impermissible exercises of Congress' traditional power to legislate with respect to noncitizens).

In those cases, the government could continue to hold the detainees simply "by reference to the legislative scheme." *Banyee,* 115 F.4th at 932. So too here. Even though Rivera Mendoza has not been individually found to be a flight risk or dangerous, his detention is constitutional. *See Demore,* 538 U.S. at 524 (emphasizing that "the aliens in *Carlson* were not flight risks" and "had not been found individually dangerous"). Regardless of whether an immigration judge would find Rivera Mendoza to be a flight risk or dangerous, § 1225(b)(2)(A) *mandates* his detention. *See Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018) ("Read most naturally, §§ 1225(b)(1) and (b)(2) thus mandate detention of applicants for admission until certain proceedings have concluded . . . And neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings."). What is more, Rivera Mendoza has no procedural right to prove facts at a bond hearing—like lack of flight risk or dangerousness—that the law renders irrelevant to his detention. *See Conn. Dep't of Pub. Safety v. Doe,* 538 U.S. 1, 7-8 (2003).

4

In sum, while *Avila* does not foreclose Rivera Mendoza's constitutional claim, other Supreme Court and Eighth Circuit precedent does. Thus, his petition for a writ of habeas corpus will be denied.

Accordingly,

**IT IS ORDERED:**

1. Petitioner Oscar Rivera Mendoza's petition for a writ of habeas corpus (Filing No. 1) is denied.

2. A separate judgment will be entered.

Dated this 13th day of August, 2026.

BY THE COURT:

Susan M. Bazis
United States District Judge